## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE WILLIAM SEITZER,** | : | **Civil No. 4:18-CV-457** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY A. BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Social Security Administrative Law Judges (ALJs) face a singularly demanding task. They are required to make a series of legal, medical and factual judgments in the course of adjudicating disability claims. They perform this task against the backdrop of a five-step sequential analytical paradigm. Moreover, oftentimes the ALJ's task is complicated by the fact that a claimant submits only sparse and sporadic medical records in support of a disability claim, and the medical record lacks any competent medical opinion evidence supporting the claimant's assertion that he is disabled.

So it is in this case. In the instant case we are called upon to review a decision by a Social Security Administrative Law Judge ("ALJ") that found that

1

the plaintiff, George Seitzer, could perform sedentary work notwithstanding the fact that he suffered from multiple sclerosis. Seitzer now challenges this determination arguing that the ALJ erred in relying in part upon the only medical opinion of record in the case, the opinion of a non-treating, non-examining state agency expert who indicated that Seitzer was capable of performing light work. Seitzer argues that it was error for the ALJ to partially rely upon the sole medical opinion offered in this case to conclude that he could perform sedentary work even though the evidence showed that Seitzer actually was employed at various times in sedentary jobs after the alleged onset of his disability.

We are very sympathetic to the medical challenges confronting Mr. Seitzer. However, given the deferential standard of review that applies to Social Security Appeals, which calls upon us simply to determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence exists in this case which justified the ALJ's decision to deny this particular claim. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.   <u>Statement of Facts and of the Case</u>

On September 23, 2014, George Seitzer applied for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social

Security Act, alleging an onset of disability beginning on September 1, 2014. (Tr. 14.) According to Seitzer, he was disabled due to the progressive effects of multiple sclerosis (MS), an impairment that was first diagnosed in Seitzer several years earlier in November 2006. (Tr. 171, 313, 448, 529, 542.) Seitzer, who was 43 years at the time of the alleged onset of this disability and was 45 years old on the date of the ALJ's decision, (Tr. 23), was deemed a younger person under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Seitzer had a high school education and past relevant work both as a telemarketer and retail manager. (Tr. 56, 81, 88.)

According to Seitzer, he was seeking disability benefits because he had experienced recent flare-ups of his MS. (Tr. 69-72.) As a result of these flare-ups, Seitzer reported that he suffered from a number of impairments including left-sided weakness, a left foot drag, difficulty lifting his left arm, blurry/double vision and daily fatigue. (Tr. 58, 61, 62, 71, 73, 204, 208.) Mr. Seitzer wore a brace on his left leg and that he took medications to treating the effects of his MS. (Tr. 62, 71, 73.)

Notwithstanding these impairments, Mr. Seitzer was able to perform some work during the period of his claimed disability. For example, at the time of his administrative hearing before the ALJ in November of 2016, Mr. Seitzer testified that he had been working on a full-time basis for approximately three months as a

telemarketer. (Tr. 58-59.)   According to Mr. Seitzer, he had been hired as a telemarketer by a temporary agency called Ruggeri Enterprises (Ruggeri) on May 31, 2016, and then by American Customer Care (ACC) on August 29, 2016. (Tr. 65, 313, 448, 511, 529, 542.)   While Seitzer testified that he struggled to go to work, he also stated that managed to perform this sedentary occupation and even worked some overtime. (Tr. 58-59, 67, 74, 77, 79.) Further, Mr. Seitzer's work history revealed other employment by the plaintiff following the alleged onset of his disability in September of 2014. Specifically, Mr. Seitzer had also worked part-time in sales for a period after September 2014 at H. Rockwell & Son. (Tr. 144, 216, 222-25, 239.)

As part of the administrative claims review process on October 30, 2014, Catherine Smith, M.D., a State agency medical consultant, reviewed Mr. Seitzer's medical records.  Based upon this medical record review, Dr. Smith concluded that Seitzer should avoid concentrated exposure to extreme heat and humidity and moderate exposure to hazards, but could perform a range of light work. Specifically, according to Dr. Smith Seitzer could perform light work with limited pushing and pulling with his left lower extremity due to his left foot drop and left ankle brace, no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and

crawling. (Tr. 95-97.) Dr. Smith's opinion is the only medical opinion evidence on the record in this case describing Mr. Seitzer's functional limitations and capabilities.

While no treating or examining source opined that Mr. Seitzer had greater limitations than those found by Dr. Smith, the ALJ received treatment records from a number of health care providers describing the care and treatment that Seitzer received from 2014 through 2016. (Tr. 510-631.) These treatment records reflected treatment for a number of routine medical complaints, and also consistently confirmed the diagnosis of MS for Seitzer. With respect to Seitzer's MS, the treatment notes  reported that the plaintiff experienced some fatigue, left side weakness and a left foot drop, as well as a wide gait and an inability to tandem walk.[1] Otherwise these clinical findings were largely normal and reported no significant worsening of his MS symptoms. (Tr.  476-79, 579-82, 594-96, 604.) Quite the contrary, these treatment notes from Mr. Seitzer's April, 2015 and April 2016 examinations both observed that Seitzer's: "Symptoms have been stable since last visit." (Tr. 582, 604.)  Further, these treatment records consistently documented that Mr. Seitzer reported that he was employed, both before and after the alleged onset on his disability in September 2014. (Tr. 511, 514, 516, 520, 523,

---

[1] Tandem walking entails heel-to-toe walking and is a medical test used to evaluate motor function.

525, 529, 542, 581, 603.) Finally, none of these physicians or treating sources ever submitted any disability forms or medical questionnaires opining that Mr. Seitzer's condition was disabling. Thus, Mr. Seitzer was unable to provide any medical expert opinion to support this disability claim.

It was against this medical and factual backdrop that the ALJ conducted a hearing considering Mr. Seitzer's disability application on November 8, 2016. (Tr. 43-90.) At this hearing Mr. Seitzer and a vocational expert appeared and testified. (Id.) Following this hearing, on March 28, 2017, the ALJ issued a decision denying Mr. Seitzer's application for disability benefits. (Tr. 11-25.) In this decision, the ALJ first found that Seitzer met the insured status requirements of the Act through December 2019, and further concluded that Seitzer had engaged in substantial gainful activity following the alleged onset of his disability in September 2014, in that Seitzer had worked full-time as a telemarketer from April through November 2016. (Tr. 16.)  Despite the period of employment, the ALJ found that there had been some other continuous 12 month periods following the alleged onset of his disability during which Seitzer had not worked. (Tr. 17.) At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims the ALJ concluded that Mr. Seitzer's MS was a severe impairment, but at Step 3 of this sequential analysis the ALJ concluded that the symptoms of Seitzer's MS did not

meet the exacting standards of a listing that would define him as *per se* disabled. (Tr.17-20.)

The ALJ then concluded that Seitzer retained the residual functional capacity to perform a range of sedentary work. (Tr. 20.) In reaching this conclusion, the ALJ gave partial weight to the only medical opinion in this case, Dr. Smith's October 2014 opinion that Seitzer retained the ability to do light work. (Tr. 22.) The ALJ then canvassed the medical treatment records provided by Seitzer's care-givers and found that while those records identified some further medical complications resulting from Seitzer's MS, the treatment records did not describe this condition in disabling terms. (Tr. 21-22.) Given the lack of any medical opinion evidence corroborating his claims of disability, the paucity of proof of disabling impairments in his treatment records, and the fact that Seitzer had been employed for six months in 2016 in a sedentary occupation, the ALJ partially discounted his subjective complaints, finding those complaints to be not fully credible. (Id.) Instead, the ALJ found that Seitzer could perform sedentary work of the type which he had actually been doing prior to his November 2016 disability hearing. (Id.)

Having made these findings the ALJ concluded at Step 4 of this sequential analysis that Seitzer could perform the sedentary work of a telemarketer, work

which he had been performing at the time of his disability hearing. (Tr. 23.) In the alternative, at Step 5 the ALJ concluded that there were substantial other sedentary occupations in the regional and national economies which Seitzer could perform. (Id.) On the basis of these findings, the ALJ concluded that Seitzer had not met the stringent standard for disability prescribed by the Social Security Act and denied his claim. (Id.)

This appeal followed. (Doc. 1.) On appeal, Seitzer argues that the ALJ erred in placing partial weight on the opinion of the state agency expert, Dr. Smith, when there were subsequent medical records that were received by the ALJ following the issuance of this opinion by the state agency expert. (Doc. 12, p. 4.) The case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we conclude, under the deferential standard of review which applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we will affirm those findings.

## III. Discussion

### A. Substantial Evidence Review – the Role of the Administrative Law Judge and the Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine

8

whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no

legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions a residual functional capacity determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See</u> <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this

determination, our review of the ALJ's assessment of the plaintiff's residual functional capacity is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime

Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997)); <u>see also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

## B. **The ALJ's Decision in this Case is Supported by Substantial Evidence**

Judged against this deferential standard of review and taking into account the limited medical records in support of this disability claim, the lack of any medical opinion evidence in support of this claim, the countervailing opinion of the state agency expert, and Mr. Seitzer's actual work history, we find that substantial evidence supported the decision by the ALJ that Mr. Seitzer could perform a limited scope of sedentary work, and was not disabled.

On appeal, Seitzer argues that it was error for the ALJ to give partial weight to the opinion of the state agency expert, Dr. Smith in making this determination, since there were also subsequent treatment records on this record, which had been received after the doctor issued her opinion. We disagree. In our view, this argument fails for several reasons.

First, Seitzer's argument fails to take in account the fact that Dr. Smith's opinion was the only medical opinion offered on the issue of disability in this case. In effect, Seitzer invites us to set aside this decision, even though it is generally congruent with the only medical expert opinion, and Seitzer himself has offered no medical opinion evidence to support his claim of disability. This we cannot do. The premise underlying Seitzer's argument seems to be the notion that an ALJ's RFC assessment must invariably be accompanied by a medical opinion which supports

that specific RFC. We cannot embrace this proposition in a case such as this where there is no evidence of any medical opinion supporting a claimant's allegations of disability. Indeed, in a case such as this where the plaintiff cannot cite to any medical opinion evidence to sustain his claim of disability it has been held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). Thus, when, as in this case, an ALJ fashions a residual functional capacity determination on a sparse factual record in the absence of any medical opinion evidence which indicates that the claimant is disabled, reviewing courts should adopt a pragmatic view and sustain the ALJ's exercise of independent judgment if that decision is properly based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).Moreover, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's residual functional capacity is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002). In this case, taking into account the state agency opinion, Seitzer's own employment history, and the relatively unremarkable clinical evidence provided by Seitzer's care-givers, none of whom opined that the plaintiff was disabled, we find

that substantial evidence supported the ALJ's decision. Therefore it may not now be disturbed on appeal.

Furthermore, in this case the ALJ properly relied upon the state agency expert opinion in making this disability determination. In this regard, it is well-settled that" "State agent opinions merit significant consideration as well. See SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....")."Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Simply put, the course of action followed by the ALJ in this case is authorized by law, particularly when that state agency expert opinion draws significant support from the clinical record, as did the opinion of Dr. Smith in this case. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); Michael v. Berryhill, No. 3:16-CV-00658, 2018 WL 279095, at *7 (M.D. Pa. Jan. 3, 2018).

In fact substantial evidence supported the opinion of Dr. Smith that Mr. Seitzer retained the ability to perform some sedentary work. Indeed, Seitzer's own work history, a work history which he described in his testimony and a work history that was confirmed in his treating physicians' treatment notes, provided

confirmation that Seitzer retained the capacity to do sedentary work after September 2014. Simply put, the fact that Seitzer *actually worked* in a sedentary job just prior to his disability hearing, and long after the alleged onset of his claimed disability, certainly provided the ALJ with some evidence that he was capable of performing sedentary work. Furthermore, the relatively benign and static medical findings set forth in Seitzer's treating source clinical records, coupled with the absence of any treating source opinion suggesting that Seitzer suffered from a disabling impairment, lent further support to the ALJ's partial reliance upon the only medical opinion that was rendered in this case, Dr. Smith's opinion that Seitzer was not wholly disabled due to his MS.[2]

Seitzer nonetheless argues that it was error for the ALJ to rely upon Dr. Smith's October 2014 state agency doctor's opinion because that evaluation did not take into account subsequent medical events in 2015 and 2016. This argument warrants only brief consideration on appeal. It is clear that the fact that state agency non-treating and non-examining source opinions are often issued at an

_____

[2] The fact that Dr. Smith, the state agency expert, was the sole medical source to provide an opinion regarding the disabling effects of Seitzer's impairments distinguishes this case from <u>Betar v. Colvin</u>, No. 4:15-CV-921, the principal case relied upon by Seitzer in this appeal. In <u>Betar</u> the court was considering a situation in which there was a treating source opinion which contradicted the state agency expert opinion and opined that the claimant was disabled. No such evidence is present in the instant case.

early stage of the administrative process, standing alone, does not preclude consideration of the agency doctor's opinion. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Instead, it may only be:

> inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, ..., if a claimant's medical condition changes significantly after the opinion is issued. See, e.g., Alley v. Astrue, 862 F.Supp.2d 352, 366 (D. Del. 2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when a state agency physician renders an RFC assessment prior to a hearing, the ALJ may rely on the RFC if it is supported by the record as a whole, including evidence that accrued after the assessment. See, e.g., Pollace v. Astrue, Civil Action No. 06–05156, 2008 WL 370590, at *6 (E.D. Pa. Feb. 6, 2008); see also Johnson v. Comm'r of Soc. Sec., Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13 (D. Minn. Sept. 20, 2012); Tyree v. Astrue, No. 3:09–1091, 2010 WL 2650315, at *4 (M.D. Tenn. June 28, 2010).

Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013). See also Michael v. Berryhill, No. 3:16-CV-00658, 2018 WL 279095, at *9 (M.D. Pa. Jan. 3, 2018).

Here, Seitzer points to no material, intervening medical events which would wholly undermine the partial reliance given to Dr. Smith's October 2014 opinion by the ALJ, nor can he. Quite the contrary, treatment notes from Mr. Seitzer's April, 2015 and April 2016 examinations both observed that his: "Symptoms have been stable since last visit." (Tr. 582, 604.) In light of the treating source reports that Seitzer's medical condition had remained stable in 2015 and 2016, the ALJ properly gave partial weight to the only medical opinion of record in this case, Dr.

Smith's October 2014 state agency expert opinion that the plaintiff was not totally disabled.

Finally, Mr. Seitzer's argument fails to consider one other salient fact. In this case, the ALJ afforded only partial weight to the opinion of Dr. Smith, who concluded that Seitzer could perform a range of light work. Instead, in recognition of the progressive nature of Seitzer's medical condition the ALJ limited Seitzer to sedentary work, but found that he was nonetheless capable of performing such work in the regional and national economy. Given the undisputed fact that Mr. Seitzer was actually working as a telemarketer performing a sedentary job from April through November 2016, it cannot be said that the ALJ erred in concluding that Seitzer could do the work which he was actually performing at the time of his disability hearing.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like the plaintiff can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo*

might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of the evidence in this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

<u>  s/Martin C. Carlson          </u>
Martin C. Carlson
United States Magistrate Judge

Dated: September 28, 2018